UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DONALD W. ABSHIRE, ET AL.

CIVIL ACTION

VERSUS

NUMBER 08-369-RET-SCR

THE STATE OF LOUISIANA, ET AL.

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, November 10, 2008.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD W. ABSHIRE, ET AL.

CIVIL ACTION

VERSUS

NUMBER 08-369-RET-SCR

THE STATE OF LOUISIANA, ET AL.

### MAGISTRATE JUDGE'S REPORT

Before the court is the Motion to Remand and to Assess Costs and Fees Against Defendants filed by plaintiffs Donald W. Abshire, et al.  Record document number 47.  The motion is opposed by defendants Admiral Insurance Company, the Louisiana Department of Insurance (DOI) and the Louisiana Office of Risk Management (ORM), Lexington Insurance Company, and the State of Louisiana through the Office of Financial Institutions and the Louisiana Office of Financial Institutions (OFI).[1]

**Background and Procedural History**

This action was originally filed in 1991 in state court by approximately 1,000 individual plaintiffs who purchased annuities, life insurance policies and corporate notes from three Louisiana companies, Public Investors Life Insurance Company (PILICO), Public Investors Incorporated (PI), and Midwest Life Insurance Company. Plaintiffs alleged that from 1987 through 1991, the State of Louisiana, by and through the DOI and the OFI, negligently and

---

[1] Record document number 64, 66, 67, and 68, respectively. Plaintiffs filed a reply.  Record document number 76.

intentionally acquiesced in the plans of the owners of PILICO, PI
and Midwest to transfer funds out of the plaintiffs' investment
companies and the funds to support failing affiliated companies in
which the plaintiffs had no legal interest.   Specifically, the
plaintiffs argued that the DOI and OFI gave regulatory approval to
these transactions in order to protect the Louisiana Insurance
Guaranty Association (LIGA) fund, which served as a guarantor for
the insurance companies that received the transferred funds.
Plaintiffs alleged that PILICO, PI and Midwest subsequently
collapsed, which resulted in losses to the plaintiffs which were
not protected by LIGA.   Plaintiffs sought rescission of the
purchases and restitution of all monies tendered and consideration
paid, or alternatively, damages incurred as a result of these
actions.

Plaintiffs amended their complaint multiple times throughout
the course of the state court litigation.   In addition to naming
the State of Louisiana through DOI and OFI as a defendant, the
Petitioners' Eighth Amended Petition, filed in March 2003, added
the State's general insurer, the ORM Self Insurance Fund, and
numerous excess insurers.[2]   On May 30, 2008, the plaintiffs filed
Petitioners' Ninth Amended and Supplemental Petition (hereafter

---

[2] Record document number 1, Notice of Removal, exhibit 2, ¶
167.

Ninth Amended Petition) seeking class certification.[3]

The State of Louisiana through the DOI, OFI and ORM (collectively the "State") removed this case and alleged that federal jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) was triggered by the plaintiffs' Ninth Amended Petition. The State asserted diversity jurisdiction under CAFA was applicable since minimal diversity exists between the parties and that the $5,000,000 aggregate jurisdictional amount is satisfied.[4]

## The Parties' Arguments

Plaintiffs moved to remand arguing that CAFA could not be applied retroactively and their suit commenced prior to the enactment of CAFA.[5]  Plaintiffs argued that their Ninth Amended Petition relates back to the original 1991 filing date and the

---

[3] *Id.*, exhibit 1.

[4] Notice of Removal at ¶¶ 2, 3, and 4.

[5] Plaintiff did not contest satisfaction of the general requirements of CAFA pursuant to § 1332(d)(2). Section 1332(d)(2) provides the standard criteria for satisfying diversity jurisdiction under CAFA and provides:
> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

class action claims should not be considered a new suit commenced against the defendants.   Plaintiffs recognized that the Fifth Circuit has held that an amended petition can be used to invoke CAFA. However, the court has limited the applicability of CAFA to amendments which add a new defendant, reasoning that such an amendment is a newly-commenced action as to the added defendant. Plaintiffs argued that because all of the defendants were added to the suit prior to the enactment of CAFA, none were entitled to invoke federal diversity jurisdiction under CAFA.

In the alternative, the plaintiffs argued that the exception to CAFA jurisdiction in § 1332(d)(5)(A) is applicable because the State is the primary defendant.   In support of this argument, the plaintiffs asserted that the liability of the excess insurer defendants is contingent on their contractual obligations to indemnify the State and the plaintiffs have not alleged any separate wrongful conduct by them.   In addition to seeking remand of this case to state court, the plaintiffs also requested an award of reasonable costs and attorneys' fees incurred in connection with the removal.

Defendants argued that the plaintiffs' Ninth Amended Petition seeking class certification for the first time represents such a fundamental change in the nature of the lawsuit that a new suit has

4

been commenced for the purpose of triggering CAFA.[6]  Defendants relied on 28 U.S.C. § 1446(b) and cited case law to support finding that the addition of new claims which are significantly distinct from those in the prior pleadings may commence a new action removable under CAFA.  Defendants argued that not only has the nature of the lawsuit changed by converting the individual plaintiffs' claims into a class action, but also a wholly new element of damages – in the form of attorney's fees and litigation costs – is now present since these kinds of damages are recoverable in a class action under both Louisiana law and the Federal Rules of Civil Procedure.  Defendants argued that the Ninth Amended Petition cannot relate back to the original filing because the defendants are unfairly prejudiced by the lack of adequate notice of the nature of the new class claims.

Defendants also argued that the term "civil actions" referred to in § 9 of CAFA should be interpreted specifically as "class actions," and thus the statute applies to any class action commenced after CAFA's enactment.  Accordingly, the plaintiffs' subsequent amendment converting these suits to a class action after CAFA's enactment date is enough to invoke CAFA jurisdiction.  Defendants noted that all of the cases relied on by the plaintiffs

---

[6] The State's and the excess insurer defendants' opposition memoranda contain both overlapping and distinct arguments.  For purpose of this report, their arguments will collectively be referred to as the defendants' arguments.

5

were originally filed as class actions and so have no bearing on
their interpretation of the statute.

Defendants argued for finding a jurisprudential exception to
the CAFA § 9 time limitation that should be recognized because of
the plaintiffs' forum manipulation.  In support of this argument,
the defendants referred to the recognized jurisprudential exception
where the courts have disregarded the time limitations set forth in
§ 1446(b) on the basis of forum manipulation.  Defendants argued
that such an exception is applicable when the plaintiffs proceeded
as individual parties since 1991, but after multiple trial fixings,
continuances, failed mediation efforts, and acknowledged client
contact problems, now change course and seek class certification.

Defendants also argued that the CAFA state actor exception
does not apply because the state defendants are not primary
defendants.  Defendants further argued that the statutory exception
requires that all primary defendants be state defendants, which
cannot be satisfied in this case.  Defendants also noted that the
court is not foreclosed from ordering relief against the State
since the State removed the case, thereby voluntarily submitting to
the judicial authority of the federal court and thus waiving
Eleventh Amendment immunity.

## Applicable Law

### Class Action Fairness Act

Enacted on February 18, 2005, CAFA amended the diversity

6

jurisdiction requirements for cases brought as class actions. Section 9 of CAFA provides that "[t]he amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act." Pub.L. 109-2, § 9.   Pursuant to these revisions, most of which are found in § 1332(d), federal diversity jurisdiction is conferred over class actions where (1) the aggregate amount in controversy exceeds $5,000,000 dollars; (2) minimal diversity is met, i.e. any member of a class of plaintiffs is a citizen of a State different from any defendant; (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief; and (4) the number of members of the plaintiff class is 100 or more. *In re Textainer Partnership Securities Litigation*, 2005 WL 1791559 (N.D. Cal. July 27, 2005), *citing*, §§ 1332(d)(2), (d)(5).

The new class action diversity jurisdiction requirements are subject to mandatory grounds on which a court must decline jurisdiction.  Under § 1332(d)(5)(A), when "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief," diversity jurisdiction under CAFA shall not apply.

Resolution of this motion requires the determination of which defendants are "the primary defendants."  The Fifth Circuit has held that "the plain text of § 1332(d)(5)(A), using the definite

7

article before the plural nouns, requires that all primary defendants be states." *Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 546 (5th Cir. 2006). In *Frazier*, the Fifth Circuit cited guidance for interpreting this term which was set forth in Senate Report 109-014, and states in pertinent part:

> For purposes of class actions that are subject to subsections 1332(d)(3) and (d)(5)(A), the Committee intends that "primary defend[a]nts" be interpreted to reach those defendants who are the real "targets" of the lawsuit - i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members). It is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption. Thus, if a plaintiff seeks to have a class action remanded under section 1332(d)(4)(A) on the ground that the primary defendants and two-thirds or more of the class members are citizens of the home state, that plaintiff shall have the burden of demonstrating that these criteria are met by the lawsuit. S. REP. 109-14, 43-44 (2005).

While it is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists, *see Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335, *rhrg. denied*, 70 F.3d 26 (5th Cir. 1995), the legislative history of CAFA indicates that "[i]f a purported class action is removed pursuant to these [§ 1332(d)] jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable

8

jurisdictional requirements are not satisfied)." S. Rep. 109-14 at 42, 2005.[7] This reversal of the burden of proof was explained as follows:

> Allocating the burden in this manner is important to ensure that the named plaintiffs will not be able to evade federal jurisdiction with vague class definitions or other efforts to obscure the citizenship of class members. The law is clear that, once a federal court properly has jurisdiction over a case removed to federal court, subsequent events generally cannot "oust" the federal court of jurisdiction. While plaintiffs undoubtedly possess some power to seek to avoid federal jurisdiction by defining a proposed class in particular ways, they lose that power once a defendant has properly removed a class action to federal court. *Id*. at 43.

With respect to the mandatory grounds on which a court must decline jurisdiction under CAFA, the Fifth Circuit has held that the "'longstanding § 1441(a) doctrine placing the burden on plaintiffs to show exceptions to jurisdiction buttresses the clear congressional intent to do the same with CAFA.'"[8]

Another deviation from the general rules of removal found in the legislative history which instructs that CAFA's jurisdictional provisions "should be read broadly, with a strong preference that interstate class action should be heard in a Federal court if removed by any defendant." *In re Textainer Partnership Securities*

---

[7] *Contra*, *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, (7th Cir. 2005), (court unpersuaded by legislative history regarding the reversal of the burden of proof).

[8] *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 804, 813 (5th Cir. 2007), *citing*, *Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 545 (5th Cir. 2006).

*Litigation*, *supra*, *citing*, 151 Cong. Rec. H723-01, H-727 (2005).
"[I]f a Federal court is uncertain...the court should err in favor
of exercising jurisdiction over the case."  *Id*.

**Attorney's Fees in State Court Class Actions**

Under state law, in a class action the named class
representative may be awarded an attorney's fee as provided by LSA-
C.C.P. art. 595.  In its entirety, art. 595(A) reads as follows:

> The court may allow the representative parties their
> reasonable expenses of litigation, including attorney's
> fees, when as a result of the class action a fund is made
> available, or a recovery or compromise is had which is
> beneficial, to the class.

The operation of art. 595(A) was extensively explained by the
Fifth Circuit in *Grant v. Chevron Philips Chemical Co.*, 309 F.3d
864, 872-73 (5th Cir. 2002).

> Literally, this article is expressed (1)
> permissively, using "may" rather than "shall"; and (2)
> conditionally, authorizing the court to allow the
> representative parties to recover litigation expenses
> (which expressly include attorney's fees) only if the
> class litigation is the producing cause of either (a) a
> common "fund" that is available to the class or (b) some
> other type of "recovery or compromise" that is beneficial
> to the class.  We first note that, on its face, this code
> article does not condition the court's authority to grant
> fees on the class's being successful to the point of
> judgment; rather, art. 595(A) requires only the
> availability of either a common fund or some other result
> that is beneficial to the class: The fund or the other
> recovery can eventuate either from a judgment or from
> some non-judicial disposition, such as settlement,
> compromise, alternative dispute resolution, or the like.
> We next note that the plain wording of art. 595(A)
> does not literally limit the permissible sources
> available for attorney's fees.  Facially, the code
> article does not restrict the source of such
> court-allowed fees to the fund or other recovery for the

10

benefit of the class; the article requires only that such benefit result from the class litigation.  Neither does the article either expressly authorize or expressly prohibit the court's tagging the defendant with such fees.  The Official Revision Comments to art. 595(A) can be read as the Legislature's elimination of any question of source by stating its intention that attorney's fees allowed to the class representatives under authority of art. 595(A) are "to be paid out of the fund or benefits made available" by the class representatives' litigation efforts.  In Louisiana's code-drafting scheme, however, such comments are not "the law," but rather are instructive or clarifying.  Like legislative history, they are most compelling when the code article itself is ambiguous - and we are not prepared to say that art. 595(A) is ambiguous.  Instead, we assume arguendo that art. 595(A) does not authorize the court to assess attorney's fees to the class action defendant; rather, that only the common "fund" or the other "benefits" made available to the class by the class representatives litigation are eligible sources of such fees.

Under that assumption, art. 595(A) remains a fee-shifting statute, but the shifting is not between the class and the defendant. Instead, the shifting is between the class representatives and the rank and file members of the class. Furthermore, such shifting is not restricted to common fund cases (which this case is not): The court can allow fees to the class representatives either from "a fund made available" or from "a recovery or compromise ... which is beneficial" to the class. Thus, in a non-fund case like this one, each class member's damage recovery could be reduced by the court and shifted to the class representatives, even if art. 595(A) were construed narrowly to prohibit the court from assessing attorney's fees to the losing tortfeasor.

In every Louisiana class action, then, the class representatives could receive attorney's fees from either (1) the defendant directly, pursuant to a separate attorney's fee statute, or (2) the non-representative members of the class indirectly, as a result of art. 595(A)'s fee shifting and attribution.

*Grant*, 309 F.3d at 872-73 (internal footnotes omitted).

**Attorney's Fees and Costs for Improper Removal**

There is no automatic entitlement to an award of attorney fees

under 28 U.S.C. § 1447(c).  The clear language of the statute, which provides that the "order remanding the case may require payment of just costs and any actual expenses including attorney fees, incurred as a result of the removal," makes such an award discretionary.  The Supreme Court set forth the standard for awarding fees under § 1447(c) in *Martin v. Franklin Capital Corporation*, 546 U.S. 132, 126 S.Ct. 704 (2005):

> [T]he standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.  *See*, *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000).  In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.  For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees.  When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

*Id.*, at 711.

The court must consider the propriety of the removing party's actions at the time of removal, based on an objective view of the legal and factual elements in each particular case, irrespective of the fact that it was ultimately determined that removal was improper.  *Id.*; *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993); *Avitts v. Amoco Production Co.*, 111 F.3d 30, 32 (5th Cir.), *cert.*

*denied*, 522 U.S. 977, 118 S.Ct. 435 (1997).

<u>Analysis</u>

**CAFA Removal Based on a New Civil Action**

Plaintiffs relied primarily on *Braud v. Trans. Serv. Co. Of Illinois* to argue that only an amendment adding a new defendant commences a new action for purposes of CAFA.[9]   Their argument is unpersuasive.   The Fifth Circuit's holding in *Braud* only addressed the particular situation in that case, *i.e.* an amendment adding a new defendant.   The *Braud* Court did not discuss whether new claims added by an amendment could commence a new action for the purpose of CAFA.[10]   *Braud's* holding does not preclude this court from finding that an amendment which significantly alters the nature of the claims commences a new suit under CAFA § 9.

The *Braud* court's holding was based in part on the fact that an amendment to a complaint can revive the period for removal when the amendment provides either (1) a new basis for removal or (2) changes the character of the litigation so as to make it substantially a new suit.[11]   The Fifth Circuit further reasoned that the amendment adding the defendant "'change[d] the character of the

---

[9] 445 F.3d 801 (5th Cir. 2006).

[10] The Fifth Circuit stated specifically in footnote 16: "We do not decide when or whether the addition of new claims to a pre-CAFA case provides a new removal window." *Braud*, 445 F.3d at 808, n. 16., *citing*, *Knudsen v. Liberty Mut. Ins. Co. (Knudsen II)*, 435 F.3d 755 (7th Cir. 2006).

[11] *Id.* at 806.

13

litigation so as to make it a substantially new suit.'"[12]  Based on this language, it appears that the Fifth Circuit has left open the possibility that newly-amended claims that change the character of the litigation could commence a new suit for purposes of CAFA.

Plaintiffs also cited *Weekley v. Guidant Corp.* and argued that a post-CAFA amendment converting individual claims to a class action is irrelevant to the inquiry of whether an action was commenced prior to CAFA's effective date.[13]  This case is not controlling or persuasive since it does not follow the line of case law, including that adopted by the Fifth Circuit in *Braud*, which has broadened the applicability of CAFA § 9.

Plaintiffs argued that the statute cannot be retroactively applied in this case.  While it is undisputed that CAFA does not apply retroactively, the defendants argued that when the plaintiffs converted their suits to a class action, they commenced a new suit under CAFA.  Defendants founded their argument on the assertion that the conversion created a wholly new element of recoverable damages – attorneys' fees and litigation costs – which significantly increased their exposure.  This argument has some support in the case law, but it is ultimately not sufficient to support federal jurisdiction in this case.

Defendants relied on *Knudsen v. Liberty Mutual Insurance Co.*

---

[12] *Id.*

[13] 392 F.Supp.2d 1066 (E.D. Ark. 2005).

14

(*Knudsen II*)[14] and *Plummer v. Farmers Group Inc.*[15] to support finding that the plaintiff's Ninth Amended Petition commenced a new litigation for purposes of the CAFA.[16]   In *Knudsen* the plaintiffs filed a state class action prior to the enactment of CAFA against defendant Liberty Mutual Insurance Company.   Plaintiffs alleged that Liberty Mutual mishandled its medical cost and utilization database when adjusting demands for payment of medical bills.   The state court subsequently entered a default judgment on the merits of the case due to the defendant's egregious conduct during the discovery process and left the decision on the damages pending.

After the default judgment was entered and after CAFA was enacted, the plaintiffs sought to hold Liberty Mutual responsible for all policies issued by any of its subsidiaries or affiliates. Plaintiffs also asked that all claims for payment by all insureds on all of these policies everywhere in the nation be covered by the

---

[14] 435 F.3d 755, 758 (7th Cir. 2006).  The *Knudsen* state action was previously removed under CAFA based on a proposed amendment to their class definition to include those plaintiffs insured by Liberty Mutual Fire Insurance Company.  *Knundsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805 (7th Cir. 2005).  Defendants argued that the amendment effectively began a new suit against Liberty Fire which was commenced after the enactment of CAFA.   The case was remanded based on the fact that Liberty Mutual remained the only defendant in the case and that the state judge had not acted on the plaintiff's proposal by adding either new claims or new parties.

[15] 388 F.Supp.2d 1310(E.D. Ok. 2005).

[16] The other cases cited by the defendants have been considered.  These two cases are discussed because they provide the most support for the defendants' argument.

default and proposed that they be certified to represent a nationwide class.  After this request, the state court certified the class as follows:

> All insureds of Liberty Mutual Insurance Company, its affiliates and subsidiaries (collectively 'Liberty Mutual'), their third party beneficiaries and their assignees who submitted medical bills covered by a Liberty Mutual insurance policy, and whose claims were paid for less than the medical charge, based upon the application of a medical cost and utilization database.

Liberty Mutual then removed the case on the basis of CAFA.  It asserted that the plaintiffs' change in the relief requested and the resulting certified class converted the original state court action into a new action.  Defendant argued that CAFA was now applicable because the "new" action was commenced after CAFA's enactment.  Although the district court remanded the action because the defendant had not been changed, the Seventh Circuit reversed and held that "a novel claim tacked on to an existing case commences new litigation for purposes of the Class Action Fairness Act."[17]  The court explained that while the original complaint sought damages based on Liberty Mutual's own adjustment work using the contested procedure, the certified class definition created new claims against Liberty Mutual for payment on all of its affiliates' policies, even if the claims had not been adjusted by Liberty

---

[17] *Id.* at 758.

16

Mutual.[18]

The analysis in *Knudsen II* is persuasive -- but it does not apply in this case.  The Ninth Amended Petition did not allege any claim which exposed the defendants to an award of contract-based attorney's fees or litigation expenses.  The foregoing explanation in *Grant v. Chevron* of how art. 595(A) is applied leads to the conclusion that the Ninth Amended Petition does not expose the defendants to a new or additional kind of damages - namely, attorney's fees and litigation expenses.   The eligible sources of the art. 595(A) fees are only the common fund or other benefits made available to the class by the class action, and it "does not authorize the court to assess attorney's fees to the class action defendant."  It merely permits shifting and attribution of fees and expenses to the class representatives from the "rank and file" members of the class, from an available fund, recovery or compromise that is beneficial to the class.  *Grant*, 309 F.3d at 872.  In these circumstances, the defendants are exposed to new or additional liability because that is not the nature of the attorney's fee award allowed by art. 595(A).  Therefore, the rational of *Knudsen II* is inapplicable.

The *Plummer* case originated as a single plaintiff presenting a single cause of action, based on an alleged material breach of contract, against three insurance company defendants.   Like

---

[18] *Id*. at 757.

*Knudsen*, *Plummer* involved the defendants' use of a computer program to adjust claims for automobile collision loses.  After CAFA was enacted, the plaintiff amended her petition to add thousands of new plaintiffs, allege a fraud cause of action, a bad faith cause of action, and a request for class certification.  Defendants removed the case shortly thereafter.  The district court conducted an extensive analysis of the factors which must be considered when determining whether the claims in an amended complaint relate back to the filing date of the original petition. The court determined that for the purposes of Rule 15(c), Fed.R.Civ.P., the amended petition did not relate back to the original filing date and instead was the equivalent to filing a new cause of action. Therefore, it was removable under CAFA.[19]

The *Plummer* court's determination was not based on the plaintiff's conversion of the case to class action.  In fact, the court did not even mention the conversion to a class action in its analysis.  Much like *Knudsen II*, the *Plummer* court focused on the extensive substantive changes made in the amended petition.  In contrast to the extensive substantive changes made in Plummer's amended petition, the plaintiff's Ninth Amended Petition consists almost entirely of allegations to establish class action status. Moreover, the plaintiffs' proposed class definition (including the sub-classes) does not include any person who is not already a

---

[19] *Plummer*, at 316-17.

plaintiff in the removed state court cases.[20]

Plaintiff's Ninth Amended Petition did not so significantly change the substantive character of the litigation as to commence a new civil action for the purpose of removal under CAFA.

Parts of the defendants' memoranda discuss the perceived unfairness of permitting the plaintiffs to now convert this 17-year-old case to a class action, and the plaintiff's patent failure to meet the central requirement of a class action - that joinder of the plaintiffs is impractical - since they are already joined as plaintiffs.  These are arguments to be considered in determining whether a class should be certified.  They do not assist the court in determining whether the case was properly removed.

**Attorney's fees and cost under § 1442(c)**

Considering all the circumstances, particularly the lack of settled case law interpreting the application of CAFA in similar circumstances, it was not objectively unreasonable for the defendants to remove this case.

---

[20] Record document number 1, Notice of Removal, exhibit 1, ¶ 1(A). For example, the sub-class in ¶ 1(A)(i) is defined as follows:

All persons or entities in the United States who filed suit against the State of Louisiana and/or its Department of Insurance or Office of Financial Institutions for damages caused by the State's conduct in connection with the failure of Public Investors Life Insurance Company, Inc., and whose claim was consolidated into Civil Action No. 377, 713 or NO. 412, 265 (captioned *Donald W. Abshire, et al., vs. The State of Louisiana, et al.*)

19

## Conclusion

Plaintiffs' Ninth Amended Petition does not expose the defendants to a new or additional kind of damages, nor does it significantly change the substantive character of the litigation. Consequently, the plaintiffs' Ninth Amended Petition does not commence a new civil action for the purpose of removal under CAFA.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the Motion to Remand filed by the plaintiffs be granted, in part.  The motion should be granted to the extent that the plaintiffs sought remand of this case to state court.  The motion should denied as to the plaintiffs' request for an award of attorney's fees and costs under § 1447(c).

Baton Rouge, Louisiana, November 10, 2008.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE